AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
7/30/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: ___eva___ DEPTUTY

FILED
CLERK, U.S. DISTRICT COURT
7/30/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: ___JD___ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America

v.

JOSE MAXIMINO TORRES,

Defendant

Case No.   8:20-mj-00462-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of July 29, 2020 in the county of Orange in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) | Distribution of Methamphetamine |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

KELLEN MCMANUS
Special Agent, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: July 30, 2020

*Karen E. Scott*
Judge's signature

City and state: Santa Ana, California

Hon. KAREN E. SCOTT
U.S. Magistrate Judge
*Printed name and title*

AUSA: Gina Kong   cell # 213-479-1743

**AFFIDAVIT**

I, Kellen McManus, being duly sworn, declare and state as follows:

### I.  **INTRODUCTION**

1.   I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered to conduct investigations of, and to make arrests for, the drug trafficking offenses enumerated in Title 18, United States Code, Section 2516.  I have received certification from the California Attorney General to conduct wiretaps as authorized in Section 629.50 et seq. of the California Penal Code.

2.   I am a Special Agent ("SA") with the United States Drug Enforcement Administration ("DEA"), and I have been so employed as a Special Agent with DEA since September 2018.  I am currently assigned to the Los Angeles Field Division, Orange County Resident Office.  While with the Drug Enforcement Administration, I have received specialized training concerning violations of the Controlled Substances Act, contained within Title 21 of the United States Code while attending the DEA Training Academy in Quantico, Virginia.

3.   Training entailed specialized drug trafficking investigative matters, including, but not limited to, drug interdiction, money laundering techniques and schemes, smuggling, financial investigations, controlled substance identification, physical and electronic surveillance, confidential source management, undercover operations, and the

1

investigation of individuals and organizations involved in the smuggling, cultivation, manufacturing, and trafficking of controlled substances.  I have since received additional training in wire intercepts.

4.  I have also spoken with individuals arrested as well as confidential informants in regard to the possession, sales and distribution of illegal substances and I have discussed these areas with other drug trafficking agents/officers.  Upon talking to the aforementioned people and senior agents, I have learned street terms involving controlled substances, including for methods of ingestion, packaging, purchasing, selling, transporting, and manufacturing controlled substances.  I have learned that subjects involved in the possession and sale of controlled substances often hide controlled substances in their homes, on their person, and in their vehicles.

5.  Additionally, I have participated in many aspects of numerous drug investigations, including search warrants, wiretaps, conducting surveillance, and arrests.  I am familiar with drug trafficking methods of operation, including the distribution, storage, and transportation of controlled substances and the collection of money proceeds of drug trafficking and methods of money laundering used to conceal the nature of the proceeds.  I have conducted investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as violations of related money laundering statutes involving the proceeds of specified unlawful

activities and conspiracies associated with criminal drug trafficking activities.

## II. **PURPOSE OF AFFIDAVIT**

6. This affidavit is made in support of a criminal complaint against and an arrest warrant for Jose Maximino TORRES ("TORRES") for a violation of Title 21, United States Code Sections 841(a)(1),(b)(1)(A)(viii): Distribution of Methamphetamine, a Schedule II controlled substance.

7. Unless otherwise stated, the facts set forth in this affidavit are based upon my personal observations; my training and experience; oral and written reports about this investigation; and physical surveillance conducted by federal agents or local law enforcement agencies, which has been reported to me either directly or indirectly. Unless otherwise noted, when I assert that a statement was made, I have either heard the statement directly or listened to a recording of the statement, or the statement was reported to me by another law enforcement officer, either directly or in a written report. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. **SUMMARY OF PROBABLE CAUSE**

8. Based on my training and experience, investigation in this case, review of investigation reports, and debriefings with

3

law enforcement officers, I am aware that on July 29, 2020, TORRES was arrested by United States Border Patrol after Border Patrol agents discovered TORRES was transporting approximately 2.2 kilograms of suspected heroin and approximately 14 kilograms of suspected methamphetamine[1] in his vehicle.

### IV. STATEMENT OF PROBABLE CAUSE

#### A. July 29, 2020 Seizure of Approximately 2.2 Kilograms of Suspected Heroin and 14 Kilograms of Suspected Methamphetamine

9. From reviewing the Border Patrol Report dated July 29, 2020 and speaking with Border Patrol Agent D. Kreuz, I learned the following:

    a. On July 29, 2020, Agent Kreuz, assigned to the San Clemente Border Patrol Station Strike Team (Highway Interdiction Unit), was conducting anti-smuggling operations along the Interstate 5 (I-5) Smuggling Corridor, in San Clemente Border Patrol Station's area of responsibility. Agent Kreuz has highway narcotics and contraband interdiction training and has been involved in multiple contraband smuggling arrests along the I-5 Smuggling Corridor in recent months. Agent Kreuz has received training in identifying contraband smuggling movements in transit and is aware of driving behaviors typically exhibited by smugglers. Agent Kreuz is also familiar with the routes and tactics used by contraband smugglers who operate along the Interstate 5 (I-5).

---

[1] Suspected heroin and suspected methamphetamine were both field tested by US Customs and Border Patrol agents utilizing a Nark Kit II and test results were positive for characteristics of heroin and methamphetamine. Official laboratory tests are pending.

b.  The I-5 corridor is well known by law enforcement as a contraband, illegal alien and currency smuggling corridor and several law enforcement agencies actively patrol the area due to the high concentration of smuggling traffic encountered there. San Clemente Border Patrol Agents and local law enforcement have intercepted numerous narcotics and bulk cash smuggling movements traveling on the I-5 corridor in recent months.  As a result, San Clemente agents regularly patrol the I-5 searching for narcotics, illegal aliens, bulk cash smuggling, and other criminal import and export violations.

c.  Agent Kreuz was wearing his full United States Border Patrol uniform and driving a marked United States Border Patrol vehicle, fleet number K34774 with all lights and working sirens.

d.  At approximately 12:30 p.m., Agent Kreuz was traveling northbound on the Interstate 5 (I-5) traveling in the number three lane, near the Cristianitos Rd. Exit, San Clemente, CA when he observed a silver Saturn sedan (CA 8SFJ376) traveling in the number one lane  (one being from the far left and four being the far right).  As Agent Kreuz was pulling along the side of the Saturn, he noticed that the driver of the vehicle looked over his right shoulder at Agent Kreuz several times and quickly snapped his head back straight each time.  No other vehicles traveling on the highway reacted to Agent Kreuz's position on the highway.  Agent Kreuz maintained his speed of travel and noticed that the driver of the Saturn looked over again at Agent Kreuz and drastically slowed in speed.  The Saturn then signaled

5

to the right and made an abrupt lane change from the number one lane to the number four lane. The Saturn then pulled behind Agent Kreuz who was still traveling in the number three lane. Agent Kreuz slowed in speed and pulled behind the Saturn. The Saturn then exited at the next exit on the freeway, which was Avenida Magdalena.

       e.    Agent Kreuz followed the Saturn as it exited the highway. As Agent Kruez followed, he conducted a record check of the license plate of the Saturn on his Department of Homeland Security (DHS) laptop, which is mounted on his service vehicle. The record check revealed that the vehicle had entered the United States via the Otay Mesa Port of Entry that day (July 29, 2020), at approximately 10:35 a.m., by the registered owner of the vehicle, TORRES, Jose Maximino (Year of Birth 1977), out of Chula Vista, CA. This seemed strange to Agent Kreuz since TORRES did not go home after his trip to Mexico.

       f.    Agent Kreuz has been involved in several smuggling events where subjects do not stop at their residence after entering the United States from Mexico and travel directly north for the purpose of delivering controlled substances.

       g.    Agent Kreuz followed the Saturn off the highway. Agent Kreuz did not activate his lights or siren at this time. The Saturn turned right and entered a Shell gas station. Agent Kreuz noticed that there was nowhere to park without blocking the customers at the gas station so he decided to park at a convenience store across the street from the Shell gas station. Agent Kreuz observed the Saturn in line for gasoline and as

6

Agent Kreuz observed the Saturn, he continued running record checks.

  h. Record checks revealed that TORRES was arrested in 1996 at the San Ysidro Port of Entry for smuggling 40.4 kilograms of marijuana. Additionally, TORRES was arrested in 1997 at the Otay Mesa Port of Entry for smuggling 46 pounds of marijuana. Lastly, TORRES was arrested in 2011 at the San Ysidro Port of Entry for smuggling .54 kilograms of methamphetamine.

  i. Agent Kreuz continued observing the Saturn, which was now at a gas pump. Agent Kreuz noticed that TORRES did not immediately get out of the vehicle. After several minutes had passed, TORRES appeared to pump gasoline into his vehicle. Agent Kreuz noticed that TORRES was walking around his vehicle and looking around.

  j. At approximately 12:40 p.m., when Agent Kreuz noticed that the Saturn and one other vehicle were the only vehicles left at the gas station, Agent Kreuz parked next to the Saturn at the gas station and identified himself as a United States Border Patrol Agent to TORRES.

  k. Agent Kreuz engaged TORRES in a consensual conversation. As Agent Kreuz greeted TORRES, Agent Kreuz noticed that the gas pump showed that TORRES purchased 2.107 gallons of gasoline for a total of $7.50. This seemed strange to Agent Kreuz since TORRES only pumped a few gallons of gasoline. Agent Kreuz asked TORRES if the Saturn belonged to him and TORRES stated that he recently purchased the vehicle.

Agent Kreuz asked if TORRES could provide identification and TORRES produced a California Driver's License.  As TORRES was handing Agent Kreuz his identification, Agent Kreuz noticed that TORRES's hand was shaking uncontrollably.  Agent Kreuz has experienced this type of nervous behavior in previous smuggling events.  Agent Kreuz continued to ask TORRES where he was traveling from and TORRES stated that he was coming from San Diego, CA.  Agent Kreuz asked TORRES where he lived and TORRES replied that he lived in Chula Vista, CA.  Agent Kreuz asked TORRES if he was traveling from San Diego or Mexico and TORRES stated that he was coming from Tijuana, Baja California, Mexico.  Agent Kreuz asked TORRES where he was traveling to and TORRES stated that he goes around neighborhoods looking for free things to sell in Mexico.  Agent Kreuz asked TORRES where he was traveling to again and TORRES stated that he was traveling to Santa Ana, California to find things to sell in Mexico.  Agent Kreuz proceeded to ask TORRES where he was traveling to in Santa Ana and TORRES stated that he was waiting for his friend to call him with directions.  Agent Kreuz has been involved in several smuggling events where subjects involved in smuggling are not told where they are delivering controlled substances until they reach a certain area.  Agent Kreuz proceeded to ask TORRES if he had ever been arrested and TORRES stated that he was arrested in the past for smuggling drugs.  Agent Kreuz proceeded to ask TORRES if he had anything illegal inside the vehicle today and TORRES stated no and told Agent Kreuz that he could look in the vehicle if he wanted to.  TORRES proceeded to open the left rear

door and front driver door of the vehicle.  Agent Kreuz asked TORRES for consent to search the vehicle and TORRES gave consent.  Agent Kreuz asked TORRES for consent for a canine sniff and TORRES also gave consent.

       l.   Agent Kreuz requested the assistance of canine and United States Border Patrol Agent M. Gonzalez arrived on scene at approximately 12:50 p.m. with his canine partner Amor (CCEP#200042).  Agent Gonzalez's canine partner Amor conducted a sniff of the vehicle and Agent Gonzalez advised Agent Kreuz that Amor had alerted to the back seat of the vehicle.

       m.   Agent Kreuz advised TORRES that the canine had a positive alert to the vehicle.  Pursuant to the positive K-9 alert, agents searched the vehicle and noticed a small spare tire sitting on top of the divider to the spare tire well.  Agents removed the small spare tire, looked under the divider, and noticed a full size tire in the spare tire well.  Agents lifted the full size tire and noticed that the tire was extremely heavy.  Agent Kreuz and Agent Gonzalez have been involved in several smuggling events where the spare tires are utilized to smuggle controlled substances.  Agents cut into the tire and noticed packages consistent with narcotics smuggling.

       n.   At approximately 12:55 p.m., TORRES was placed under arrest without incident.  At the San Clemente Border Patrol station, agents recovered a total of four bundles of narcotics from the tire.  A presumptive field test of the substances in one of the bundles was conducted utilizing Nark Kit II.  The bundle tested yielded positive results for

methamphetamine.  The test was conducted by Agent R. Tortoledo and witnessed by Agent J. Burzumato.  The methamphetamine weighed approximately 14 kilograms.

        o.   A field test of the substance in a separately wrapped bundle was conducted utilizing Nark Kit II.  The bundle tested yielded positive results for heroin.  The test was conducted by Agent R. Tortoledo and witnessed by Agent J. Burzumato.  The heroin weighed approximately 2.2 kilograms.

      **B.**    **Post Miranda Interview of TORRES**

    10.  On the same day, at approximately 5:16 p.m., I and DEA SA Mark Ibraham interviewed defendant at the San Clemente Border Patrol Station.  TORRES was advised of his rights under Miranda.  TORRES indicated verbally and in writing that he understood his rights and that he was willing to speak to investigators.  TORRES was not promised any leniency on his charges in exchange for his interview.  TORRES stated that he buys things from the U.S. and sells them in Mexico and arrived at his house in Tijuana the prior evening.  This morning, he crossed back into the United States and met with an unidentified man at the DMV near the border of Mexico and the San Ysidro Port of Entry.  When TORRES met the unidentified man, he agreed to give the man his car.  The man took TORRES's car for approximately twenty minutes and then returned the car to TORRES at the DMV.  TORRES stated that the man said he would pay TORRES $650 to drive his vehicle to Santa Ana, California.  TORRES stated that he then drove his car north from the DMV and that he knew whatever was contained in the back of the car was illegal.  When asked if he

knew the unidentified man's phone number, he stated that he had the number in his phone but that he did not remember the number. TORRES admitted in the interview that he had transported controlled substances in the past.

## V. CONCLUSION

11. For all the reasons described above, there is probable cause to believe that TORRES has committed a violation of Title 21, United States Code Sections 841(a)(1), (b)(1)(A)(viii), Distribution of Methamphetamine.

/s/
Kellen McManus
Special Agent
Drug Enforcement Administration

Subscribed to and sworn before me **telephonically** this 30th day of July, 2020.

*Karen E. Scott*
UNITED STATES MAGISTRATE JUDGE
KAREN E. SCOTT